Madam Clerk, please call the roll. 317-264-BHS-Dominion, affidavit by Kevin Herrington v. City of Wilmington, affidavit by William H. Herrington Counselor, please proceed. Thank you, Your Honor. Your Honor, please call the roll. I move for the Court on 1 Certified Question on Rule 308, Consisting of Two Parts. The issues surround the application of the active immunity created by Section 3-110 of the Wilmington Amendment Act, which specifically provides that a public entity is not liable for any injuries which occur on rivers, lakes, streams, or waterways. It doesn't say how the injuries may arise, whether a person drowns, whether a person slips off a pier, whether a person is hit by an automobile. It says that a public entity is not liable for any injury. It doesn't mention how it occurs, but it occurs on the waterway. The point of Kankakee River is under federal jurisdiction. It's a navigable stream. This Court can take judicial notice of the point of reference to two elements of Supreme Court importance. This Court can take judicial notice of the river being automatically a waterway, therefore neither own nor operate nor maintain nor control by the city. Immunity, since the Illinois Supreme Court decision in Barnett and up through the recent decision in Rhea, a couple of years ago, has recognized that the courts are without power to read any exception into an immunity which is otherwise taxed to the United States. They've rejected efforts by Clay, Wisconsin, to say immunity doesn't apply to World War I in the context of Section 2-201 of the Tort Immunity Act. In connection with Section 3-108 of the Tort Immunity Act, which is since been repealed, the Court in Barnett refused to read exceptions into the Act. The Court has refused to read exceptions in corrupt and malicious motives. The Court has refused to read Section 2-202 of the Act as an exception to an otherwise absolute immunity provided, which immunizes a public entity for any response by an escaped person. The Clay, Wisconsin, will suggest an escape. The effect of the Toronto Court's ruling was, contrary to the Toronto established reporting, to read an exception into the Tort Immunity Act, to read two. The first half of the certified question is, is immunity unavailable when the city owns a dam, when the city owns water, or owns property on the waterway? Clearly, it doesn't make sense to confer an immunity upon a public entity for injuries occurring on a waterway and try and say that somehow or other the municipality is located impacts whether or not immunity was available. The decision of the 2nd District, in choice, expressed the objective argument of the plaintiff that the location of the public entity, whether on or off the river, makes the immunity unavailable. There's simply no reference to the location of the public entity in 3-110. So whether or not the city owns property on the Kentucky River does not make the immunity unavailable. Secondly, to recognize an immunity because the city owns, or to conclude that immunity is unavailable because the city may own structure on or in or near the river, again, creates an exception. An exception for, in this case, the structure in front of the dam. If the city owned a pier, and an individual slipped off a pier and drowned in the water, would the immunity be unavailable? The 1st District opinion in McCoy involved a situation like that, and they found that Section 3-110 of the Act applied. And Darren Longshoreman slipped off a pier, or slipped off a dock raft and drowned in the Taliban Harbor. The court held that 3-110 of the Act applied in that situation and conferred an absolute immunity. So, given the over 25, 30 years of Supreme Court authority, seeing the courts cannot read an exception to the Court of Immunity Act, to recognize the exception for the immunity in this particular case based upon location of the public entity, or based upon whether or not there's a structure in or on or near the river, would be reading an exception in contrary to the teaching of the Supreme Court. The immunity on this case, here, is absolute. The 2nd issue, the 2nd half of the question, is whether the Rivers, Lakes, and Streams Act somehow trumps the immunity. Does it override the immunity that would otherwise be available, should this court conclude that the fact that the ownership of the dam, and the fact that being a riparian owner, does not negate the immunity? We have offered 4 reasons for this court to conclude that the Rivers, Lakes, and Streams Act does not trump the immunities afforded in the Court of Immunity Act. When one looks at the Rivers, Lakes, and Streams Act and the sections that are issued, under the 2 sections of the Rivers, Lakes, and Streams Act, the General Assembly directed that the Department establish standards for dams, and also the 2nd statute, as issued in this case, also directed that the Department of Natural Resources inspect dams. And what they did in that statute is, after imposing those obligations on the State, on the Department of Natural Resources, they said, you're going to be immune from liability in this case. You've created an immunity for the State. To make it clear, that simply because we gave you that directive, does not mean that you're going to be subject to liability. You're going to be immune from liability. And what they added at the conclusion of that section, where right after they gave the State the immunity, they stated the following phrase. Nothing in this act shall relieve the owner or operator of a dam from the legal duties, obligation, and liabilities arising from ownership or operation. That's the language upon which the plaintiff-patient act, maybe the Rivers, Lakes, and Streams Act, somehow trumps the immunity. And it offers 4 reasons to the Court as to why it doesn't trump it. First, when you read the statute as a whole, which the Court has to do, it's clear what the General Assembly is simply doing, is that since we conferred an immunity upon the State, we want to make sure that there's no ifs, ands, or buts, that this statute does not also immunize local owners. It says, nothing in this act shall relieve someone of their obligation. It doesn't say this act imposes some duty or some obligation on the public. Secondly, even if that section you're found to have somehow imposed a duty, keep in mind that the Supreme Court has repeatedly said the issues of duty and the issues of immunity are two separate inquiries. The Court, what we argue here, is that even if the Court were to construe that statute, somehow strain the language to say it imposes a duty upon the public. We argue that duties and immunities are two separate issues. I believe the strongest argument is found in the Supreme Court cases addressing similar situations, where an issue was raised, it said, listen, there's a duty under the Motor Vehicle Code. That duty should trump the immunities conferred by the Motor Vehicle Code, or immunities conferred by the Act. And then in the context of addressing the issue of the in-local parental statute and the liability of the public entity for injuries that occurred to the student, it said, hey, you know, it's an argument that was raised that the in-local parental statute, which applies to all schools, trumps the immunity afforded in the Tort Immunity Act. But the Supreme Court said, no, no. Those statutes operate, quote, in their own sphere. The Motor Vehicle Code applies generally to all people. But the Tort Immunity Act specifically applies to public entities and public employees. So each operate in their own sphere, and we never get into the issue of, and as the Court said, we don't care what's general and what's the more specific, we're not going to get into those issues of statutory construction. Each operate in their own sphere. The Motor Vehicle Code operates against anybody who opposes duties. The Tort Immunity Act just deals with public entities. The same thing when they're addressing the in-local parental statute. So wait a minute. The in-local parental statute and the immunity recognized in coherency applies to all schools, parochial schools, public schools, private schools. The Tort Immunity Act, however, again, deals in its own sphere. It deals specifically with public entities. So we're not going to get into the issue of what's more general and what's more specific. That's what they expressly said. You don't need to go there. Each statute operates in its own sphere. So we would argue that whatever, you know, the whatever immunity may be or whatever liability may be imposed as a result of the Rivers, Lakes, and Stream Act, that imposes a liability on one sphere of the population, on the private sphere. The Tort Immunity Act in the public sphere is unaffected by those authorities. Lastly, when one looks at the purpose of the acts themselves, you look at the stated purpose of the Rivers, Lakes, and Stream Act is to promote enjoyment by the public of the waterways, of rivers, and their use of it. It has nothing to do with liabilities. It has nothing to do with duties. The Tort Immunity Act on the other hand specifically, the purpose of that act is to confer immunities on public entities. So both statutes have different purposes. So that's a fourth reason to conclude that the Rivers, Lakes, and Stream Act does not trump the Tort Immunity Act. Just to address one issue of ownership of the waterway, which was raised by the plaintiff to argue that this court has privately granted leave to appeal under Rule 308. She says, you're a riparian owner. You live on the waterway. You have all property on the waterway. Therefore, under common law principles, you own the riverbed up to the center. That may very well be the common law rule. But she doesn't connect the dot. How does ownership of the riverbed create ownership, operation, maintenance, or control of the river? The river is a navigable waterway. It's the Department of the Army that controls it. If we try to do anything on the river, it's a felony. It's a crime, rather, unless we get the permission of the Army. I'm sorry. The Corps of Engineers, you're correct, Your Honor. It's the federal government. I was just arguing the case before this one was called. We should have given you a case-off. Equally important, you cited your Supreme Court authority that specifically addressed the issue. It said, you may own the riverbed, but you certainly don't have any rights for control over the water. Regardless of whether under common law we own the riverbed to the Senate, that doesn't equate with ownership, maintenance, or control of the waterway of the river itself, which is what the Florida Immunity Act addresses. It doesn't talk about the riverbed. Again, just looking from a common sense perspective, if a riparian owner is not entitled to immunity simply because they may own property on the waterway, then what purpose is there to confer immunity on a public entity? I mean, let's face it. Other than a strange circumstance, other than a choice, where the Chicago YMCA had an outing in the 2nd District, and I believe it was on the Fox River, where kids drowned because they unrolled the boat. Except in that limited circumstance, why would you have immunity? As I said, as long as the statute specifically refers to injuries occurring on, in, or near the waterway, not only in your control, you're entitled to immunity. If she comes here and alleges the arguments that we have ledged, if she alleges in the complaint ownership, maintenance, and control of the river, we have two responses to that. One, we've cited authority for this Court. There's a fact in which this Court takes judicial notice. That controls over any contrary allegations to the complaint. And I would ask the Court also to look specifically at what that allegation is. It doesn't say we own the river. It said, because you own the dam, you own the river. That's one of the issues that this Court has to decide. Whether or not the ownership of the dam and the ownership of property on the river affects immunity, we ask this Court to conclude and answer the certified question that ownership of the dam and ownership of property on the river does not defeat immunity, and that the Rivers, Lakes, and Streets Act does not trump the assertion that you can put up a statute. Why did the Court certify a question here? Why? Yeah? The Court certified the question appropriately because there is an issue upon which there is substantial disagreement. I mean, Your Honor, the case law is clear that there should not be an exception and immunity should not be found. We cited authorities to Your Honor, or to the Court, rather, that if there's an issue that has not been addressed, that certainly shows that there's room for substantial difference of opinion. Will it materially advance the litigation? Litigation has since generally been stated because of the appeal tendency in this Court. This is a complicated case. Addressing this issue at this stage, and rule in our favor, will certainly materially advance the litigation. It will edge the litigation. Those are points that we raised in Article I, in opposition, in response to the plaintiff's argument that this Court had already granted leave for appeal under Rule 311. If that answers your question, I hope it does, Your Honor. It does. Thank you. Are there any further questions? Thank you. Thank you, Counsel. Counsel. May I please report, Counsel? First, I would like to start off by saying that Counsel read you the statute that he wanted it to be, not the actual statute. What Counsel said is, no public entity is liable for any injury occurring on, in, or adjacent to a waterway, lake, pond, river, or stream, period. That's not where the period ends. The sentence goes on to state, not owned, supervised, maintained, operated, managed, or controlled by the local public entity. As this Court knows, in Frayn, all six of those enumerated activities need to be looked at. That's part of the statute. That's the plain language of the statute. He talked about the other cases. He talked about Choice, McCoy, and Frayn. Not one of those cases was there a riparian landowner. The issue of a riparian landowner has not come before this Court or any other Court. To read into this statute an exception that riparian landowners are not liable would be exactly what you're not supposed to do. Counsel continues to state that Plaintiff wants to read something, read an exception into this statute. I do not. I want to follow the plain language of this statute. And this statute plainly says control, supervised, maintained, operated, or managed. And I've submitted to this Court title to the property. That's ownership. I submitted to this Court the last law dictionary that defines ownership. To rule otherwise is creating an exception to this statute. Well, how can they own a navigable river? They don't own the entire river, Donna. They own the portion of the river where the incident occurred. And in Choice, that's exactly what the Court said you're supposed to do, is look at the location of the incident to find out who owns the property. They own the property where the incident occurred. They own the park. They own the dam. They own the property underneath the dam. And they own the property to the center stream of the Kankakee River. That's ownership. That's ownership where the incident occurred. How can ownership of any river, lake, or stream come other than by the bed of the waterway? You can't own any water that's flowing unless you own the bed. There's no other way ownership can be maintained. Why is ownership in this statute if ownership doesn't apply? Are there any cases where if it's a navigable river controlled by the federal government, yet you say even though it's a navigable river, your client can own it? Absolutely there is, Your Honor, and it's in my brief. It is, I believe it's Whitehall v. Stordahl. In that case, it was regarding the property. And ironically, it's regarding the Kankakee River in Wilmington. And in that case, In that particular case, the court had held that if you own the property on either side of the river, you own that river to the center stream. This is the Supreme Court case. And actually, one second. I do have it right here. Washington Ice v. Stordahl, 101 Illinois 46, 1818. The Supreme Court made it clear that riparian rights are rights of ownership. The Illinois Supreme Court held if the same person be the owner on both sides of the river, he owns the whole river to the extent of the length of his land upon it. And this is the title to the middle of the stream, includes the water, the bed, and all items. This is a Supreme Court case that is still good law. There have been many, many cases that come after this case that was entered 200 years ago that state that the riparian owner has a right to the property even if it's a navigable river. In addition to that, Your Honor, this defendant urges this court to decide this case as in either Section 3110 of the Tort Immunity Act applies or the Rivers, Lakes, and Stream Act applies. I submit to this court that the defendant's common law duty to reasonably maintain its property, including the park, the dam, and the river, exists with or without the Rivers, Lakes, and Streams Act. In order to analyze this case, we must discuss four things. First, duty. Second, Section 3-110. Third, the Rivers, Lakes, and Streams Act. And fourth, the certified question. First, under duty. Under the common law in the state of Illinois, every property owner, including municipalities, have a duty to maintain their property in a reasonably safe manner. There are three pieces of property that I just mentioned, the park, the dam, and the riverbed. Although the Tort Immunity Act does not create duties, Section 3-102 of the Tort Immunity Act acknowledges this common law duty. Section 3-102 states a public entity has the duty to maintain its property in a reasonably safe condition. Furthermore, the Illinois Supreme Courts have consistently held that the Tort Immunity Act is in degradation of the common law and should be strictly construed against the defendant. The defendant, by seeking immunity, acknowledges its duty to reasonably maintain its property. Section 3-102 of the Tort Immunity Act would apply in this case, but it says if the defendant has actual or constructive knowledge, they will not be immune. This defendant had actual and constructive knowledge of over 40 incidences, 4-0, at this exact location. So Section 102 would not apply. So since Section 102 would not apply, they went to Section 110. Under Section 110, it does not grant immunity for its failure to maintain its property, specifically the dam. The dam controls the river. How can a dam not control the river? The dam, by its very nature and definition, controls the river. For this defendant to state that Section 3-110 applies is in direct conflict with the actual plain language of the statute. The statute specifically says, own, supervise, maintain, operate, manage, or control by the local entity. To maintain that the local entity does not control the river by virtue of the dam makes no sense. It is illogical. In addition to that, counsel continues to go on to state that the state of Illinois and the federal government have complete control, that they can't do anything. If that were true, why did the state of Illinois pass a law saying, give us this dam? If you give us this dam, we're either going to sell it, replace it, tear it down. We're going to do the following things. That statute is in the plaintiff's brief as well. If they have complete control, they wouldn't need the city of Wilmington's permission to do something to the dam. The state of Illinois specifically passed a law saying, give us this dam, and we will take care of it. They refused to give them the dam. So the state of Illinois and the federal government don't have control of the river at this location. They do by virtue of ownership of the dam. Since this local public entity both owns and controls the Kankakee River at the location of the incident, the Tort Immunity Act does not apply. If this court were to rule on the 308 question, they would have to make two findings of that. This court would have to make a finding of fact that riparian owners under no circumstances are to be liable. That's not what the statute says. This court would also have to make a finding of fact that a dam does not control a river. That would not be consistent with case law or with common knowledge. The statute itself does not differentiate between the ownership of the riverbed or the water. The defendant has gone to great lengths to argue to this court that the word owned is referring to water, not the riverbed. That is not in the plain language of the statute. The plain language only says owned. In addition to that, the Rivers, Lakes, and Streams Act does not create an independent duty upon this defendant. The Rivers, Lakes, and Streams Act reinforces the known common law duty to maintain its property. So the Rivers, Lakes, and Streams Act says no owner. Nothing in this act shall relieve an owner or operator of a dam from the legal duties, obligations, and liabilities arising from the ownership and operation. The legal duty is a common law duty that this municipality has to properly own and maintain this dam. It is not properly owning and maintaining this dam because this dam creates a dangerous and deadly underwater vortex where over 40 people have been caught in this vortex. The Rivers, Lakes, and Streams Act simply reinforces the common law duty.  The fact that this duty exists exists with or without the Rivers, Lakes, and Streams Act. I am not asking this court to say that the Rivers, Lakes, and Streams Act somehow trumps the immunity because the immunity doesn't apply on its face. The Rivers, Lakes, and Streams Act doesn't create the immunity. The common law does. I'd like you to answer the question that was earlier asked about why this is premature. I believe it is, Your Honor. I don't believe it. Why? Because so many factual issues must be decided by the trial court or by this court. For example, because the statute doesn't end at the Rivers, Lakes, and Streams, it has those six other activities that are mentioned in frame. And if you look at those six activities in frame, this court has stated that if the defendant is doing any one of those activities, the immunity will not attach. And we have not only pled, but we have offered this court actual facts that are actual evidence that this defendant has owned and controlled the Kankakee River at the location of the incident. And so I'm saying that the 308 question is not proper because you have to make findings of fact in order to answer it. And that was the last part of my argument. But in essence, what you're saying the control was because, but for the dam, the dam causes certain things in the waterway, vortexes. Yes, Your Honor. And that's the essence of your control argument. Well, absolutely. Well, a dam, even without the vortex, controls the water, right? Because it dams up the water behind the dam, and then the water overflows the dam and continues downstream. So in this particular case, in addition to damming up the water and then allowing it to flow over, in addition to that, it also creates this underwater vortex. So I'm saying that by virtue of owning the dam, they are controlling the river. And I'm saying that they are not properly maintaining their property, which is the dam.  And that they also hold legal title to, which is in my brief, that they're not reasonably maintaining that property because that property in and of itself is creating the vortex. Well, how far down the river does the, do you allege the city controls because of the dam? How far into the waterway? The entire river, Your Honor. The dam controls all the water on the river. I mean, the dam would control all the water upstream because all that water is now being dammed up. And then it's controlling all the water downstream because it's controlling how much water goes over or through the dam. So the dam controls the entire river. Because if you take the dam away, the water changes, the river changes. I mean, there can be flooding, there can be... So it's just this one dam that controls the whole Kankakee River. I believe that there are more than, there's more than one dam on the Kankakee River. But I would submit to Your Honor that the very nature of the dam controls the river. And that if you take any one of the dams away, it changes the river. If you add another dam, it changes the river. Any other questions? Thank you, Counsel. Thank you, Your Honor. Counsel, you may respond. In choice, the Second District expressly rejected an argument that the location of the public entity is determinative of whether or not the immunity applies under 2.110. We specifically rejected that contention. It was not inferred, specific rejection. As far as this argument that somehow we have a duty that somehow negates the immunity, as the Supreme Court made clear in CDG. Duty and immunity are two different issues. Most recently, I want to say two months ago in a case against the city of Vanville, the Supreme Court addressed the issue of whether somehow 3.102 made immunity available, somehow negated the absolute immunity concluded under 2.201. A different section for the absolute immunity. The Supreme Court said 3.102 does not negate that immunity. They found in that particular case there was an issue of whether or not the actions that issue were ministerial or discretionary. Instead, because of that, 2.201 applies. They expressly rejected the argument. That's why I put it. The very next issue of if you own the riverbed, the plan of sites, the Illinois Supreme Court Authority issue says, where you own it on both sides, then you own the waterway. Now, two issues. One, you don't own it on both sides, so that doesn't apply. Equally important, I would direct this Court's attention to page 2 of our agreement, the U.S. Supreme Court. Whether under local law, the title to the bed of the stream is retained by the state, or the title of the riparian owner extends to the thread of the stream, or as in this case, to a low watermark, the rights of the titleholder are subordinate to the dominant power of the federal government. That scotches the riparian owner argument that somehow we control the waterway. The dam is a structure that simply sits there. To say that that somehow means that we control the waterway, I would say that stretches the word control and stretches what the General Assembly would have had in mind when they used the term control the waterway. What does the dam do? The dam sits there. It doesn't do anything? The dam just sits there. The dam sits there. And what it does in a lot of rain, it keeps downstream property from flooding. That's what it does. The dam, that's what this is. It doesn't generate power. And there's a purpose to a dam. Yes, there was a purpose to the dam. And we ended up acquiring ownership of it after the dam was built. But to say that that yields control in the sense that the General Assembly had in mind, keep in mind that a statute, you know, there's a terminology, a rule of statutory construction, words are determined by the company they keep. There's a fancy Latin phrase for that, and I forget what it is. But look at the idea of control in the context of own, operate, maintain, control. Okay? It means something more than owning the structure on a waterway. When you look at it. Normally dams can, you can regulate some of the water flow. There's no sluice or anything on this particular dam that would regulate the flow. There's simply a, I forget what it's called, there's a bypass channel that's just there, a channel, and it allows fish to get back and forth, as far as I understand the purpose of it. But there's no sluice, there's no jets to open it up without it. The dam just sits there. And as I said, in the event of heavy rain, what it does, it prevents water, prevents downstream property from being flooded. That's why it just sits there. I don't know what else to say than it just sits there. And we're not asking this court to make any factual determination. By taking judicial notice that this is a navigable waterway, subject to the jurisdiction of the Army Corps of Engineers. That's a fact, an accepted fact, not a fact that this court has to deny. Anyone have any questions? Thank you, counsel. Thank you both for your arguments. In this case, the matter will be taken under advisement and a decision rendered in the future. Now we'll take a brief recess for a panel change for the next case. Thank you.